JOURNAL ENTRY AND OPINION
{¶ 1} This is a consolidated appeal from a judgment issued by the Cuyahoga County Court of Common Pleas, Juvenile Division, which awarded permanent custody of two children, referred to herein as "child 1" and "child 2" (collectively "the children"), to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Finding no error in the proceedings below, we affirm.
 {¶ 2} The following facts give rise to this appeal. Appellants J.V. ("mother") and S.W. ("father") are the natural parents of the children. Child 1 was born in 1998, and child 2 was born in 2003. Intervenor-appellants L.G. and C.G. are the maternal great-uncle and great-aunt ("uncle and aunt") of the children.
 {¶ 3} In 1999, child 1 was diagnosed with multiple bilateral rib fractures, a femur fracture, a skull fracture and retinal hemorrhaging. The father pled guilty and was convicted of attempted child endangerment for the injuries. The father was sentenced to prison and was released in November 2001. He then resumed cohabitation with the mother and had child 2. A few months later, in September 2003, child 2 was admitted to the hospital with severe head injuries that were consistent with "shaken baby syndrome." The father was convicted of attempted murder and various other charges. The mother was convicted of endangering children, on the theory that she knew of the father's propensity to harm her young children and because she violated a court order not to live with the father. Both the father and mother were sentenced to prison. CCDCFS placed the children in the same foster care home.
 {¶ 4} On September 8, 2003, CCDCFS filed a complaint for abuse, neglect, dependency and permanent custody. The uncle and aunt filed a motion to intervene and petition to be appointed custodian of the children. The trial court granted the motion to intervene as to the disposition of the case only.
 {¶ 5} In February 2005, following an extensive dispositional hearing, the trial court awarded permanent custody of the children to CCDCFS and denied the petition for legal custody of the children filed by the uncle and aunt. This appeal followed.
 {¶ 6} All of the appellants raise a similar assignment of error claiming that the trial court erred in awarding permanent custody of the children to CCDCFS, because it was not in the best interests of the children when suitable relatives were available to raise the children. The assigned errors are specifically set forth in the appendix; we shall address them together.
 {¶ 7} In order for a juvenile court to terminate parental rights and grant permanent custody to a county agency, two requirements must be met. The trial court must find, by clear and convincing evidence in the record, 1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a)-(d), and 2) that permanent custody is in the best interest of the child. In reC.W., 104 Ohio St.3d 163, 165-166, 2004-Ohio-6411; In re S.B.,
Cuyahoga App. No. 85560, 2005-Ohio-3163. Clear and convincing evidence is "that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469.
 {¶ 8} An appellate court must adhere to "every reasonable presumption in favor of the lower court's judgment and finding of facts." In re Brodbeck (1994), 97 Ohio App.3d 652, 659, quotingGerijo, Inc. v. Fairfield, 70 Ohio St.3d 223, 226,1994-Ohio-432. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 {¶ 9} In this case, none of the parties dispute that the first requirement for awarding permanent custody was met, as one of the conditions under R.C. 2151.414(B)(1)(a)-(d) was established. Specifically, the condition under R.C.2151.414(B)(1)(d) states that "The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." The parties in this action stipulated that the children were removed from the home in September 2003. The trial court found that the children had been in the custody of the CCDCFS since September 2003, had been in the same foster home since placement, and had been there longer than twelve months. We find that there was clear and convincing evidence to establish that the condition in R.C. 2151.414(B)(1)(d) was met.
 {¶ 10} The primary challenge in this case involves the second requirement for awarding permanent custody, which is whether permanent custody is in the best interest of the child. R.C.2151.414(D)(1)-(5) sets forth the following relevant factors that the juvenile court must consider in determining the best interest of the child:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether * * * [it] can be achieved without a grant of permanent custody to the agency;
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 11} In determining the best interests of the children in this case, the juvenile court considered the above factors. The court considered the interaction and the interrelationships of the children. The court found that the children were doing well in their placement and had bonded with their foster family. The court also recognized that the uncle and aunt's home and their circumstances would be appropriate for the children and that they had a positive bond with the children. However, the court was concerned by the fact that the uncle and aunt had continuously expressed their belief that the parents did not cause any harm to the children.
 {¶ 12} The juvenile court also considered the remaining factors of R.C. 2151.414(D). The court considered the wishes of child 1, as expressed by the guardian ad litem. Child 1 had expressed contentment in the foster home. According to the guardian ad litem, although child 1 wished to continue visits with the uncle and aunt, child 1 did not express a wish to live with them. The court further indicated that even if child 1 had expressed a desire to live with the uncle and aunt, because of child 1's age and the need to keep child 2 safe, the court would not place the children with the uncle and aunt.
 {¶ 13} The court also noted that the children had been in the foster home since September 2003. At the time of the court's ruling the children had been in the foster home for seventeen months. We note that at the time of this decision they have been in the foster home for over two years.
 {¶ 14} The court determined that the children could not and should not be placed with either parent within a reasonable period of time, because both parents were convicted of offenses involving physical harm against child 2 and because the father previously was convicted of an offense involving harm against child 1. The court stated that the subsequent abuse of child 2 after the father's reunification with child 1 indicated that the children should not be placed in a situation where they would have future contact with the parents. The court ultimately concluded that the children would not be safe without a grant of permanent custody to the CCDCFS and placement with nonrelatives.
 {¶ 15} The father and the uncle and aunt assert that the juvenile court should have given preference to the uncle and aunt because of their status as relatives of the children. Although a blood relationship and family unity are factors to consider when determining the best interest of a child, neither one is controlling. The father also argues that nobody ever inspected the uncle and aunt's home or the circumstances of their lives. The record reflects that the uncle and aunt provided testimony about their home and the court found that their home and their circumstances would be appropriate for the children. The court clearly considered these factors, but upon a consideration of all relevant factors found that awarding custody to the uncle and aunt was not in the best interests of the children. Indeed, this court has previously recognized, "the mere existence of a good relationship is insufficient. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship." In re R.N., Cuyahoga App. No. 83121,2004-Ohio-2560, citing In re Holyak (Jul. 12, 2001), Cuyahoga App. No. 78890.
 {¶ 16} The uncle and aunt and the children's mother and father also point to evidence that numerous other children reside in the foster home and one child died in the home in October 2004. However, testimony was provided that no wrongdoing was found on the part of the foster parents in connection with this death. Rose Marie Conrad, a social worker for the Berea Children's Home and Family Services and case manager for the foster care of the children in this case, testified that "The quality of care of any of the children placed in this foster home has never been under question ever." Ms. Conrad also indicated that the child died of natural causes — "aspiration," "in his sleep." This child had been in the foster home for two months. Ms. Conrad stated that child 1 received counseling and neither of the children in this case were adversely affected. Ms. Conrad also indicated that the children are receiving care of the highest quality in the foster home, their transition has been excellent, they have a very close bond with the entire family and are treated like members of the family, and the foster parents intend to adopt them.
 {¶ 17} It is clear from the record that upon the juvenile court's consideration of the best interests of the children, the court was clearly concerned by the uncle and aunt's belief that the children's parents had not harmed the children and felt the children should not be placed into a situation where they would have future contact with their parents. The juvenile court came to the ultimate conclusion that the best interests of the children would be best served by giving permanency to their upbringing in a safe and stable home. This court has recognized that a child's best interests require permanency and a safe and secure environment. In re Holyak, supra; In re T.W., Cuyahoga App. No. 85845, 2005-Ohio-5446.
 {¶ 18} Pursuant to the totality of the underlying facts in this particular case, we find that there was competent, credible evidence to support the juvenile court's factual determinations and that the court's grant of permanent custody was not an abuse of discretion. The assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and George, J.,* concur.
Appendix:
Father's assignment of error provides:
"1. The trial court erred in awarding permanent custody to[CCDCFS] when suitable blood relatives stepped forward to raisethe children.
 A) The trial court erred by failing to conduct an adequateinquiry into the circumstances surrounding the death of anotherchild in the same foster home that [the children] had beenplaced.
 B) The trial court erred by failing to conduct an adequateinquiry of the foster parents which [CCDCFS] intended to place[the children] with on a long term basis."
Mother's assignment of error provides:
"The trial court erred by awarding permanent custody of [thechildren] to [CCDCFS] when it was not in the children's bestinterest."
The uncle and aunt's assignment of error provides:
"The trial court erred in awarding permanent custody to[CCDCFS] when relatives were available and suitable for theposition."
* Sitting by assignment: Judge Joyce George, retired, of the Ninth District Court of Appeals.