JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, H.H. (" Mother"), appeals from the judgment issued by the Cuyahoga County Court of Common Pleas, Juvenile Division that awarded permanent custody of her child (referred to herein as "D.C.") to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Finding no error in the proceedings below, we affirm.
 {¶ 2} The following facts give rise to this appeal. D.C. was born on August 25, 2003. R.C. ("Father") and Mother are D.C.'s biological parents. D.C. was removed from the custody of her parents on January 22, 2004, when D.C. was approximately five months of age, because of allegations of no gas in the home, domestic violence issues between the parents, and the subsequent incarceration of Mother.
 {¶ 3} D.C. has not lived with her parents since her removal from their home. At the time of removal, no relatives came forward to care for D.C. D.C. was committed to the temporary custody of CCDCFS and was placed into a foster home.
 {¶ 4} On July 24, 2004, Mother was found guilty of assault on a police officer and was sentenced to community control, which she violated. In January 2005, Mother was indicted for and found guilty of felonious assault by means of a deadly weapon. She was sentenced to one year in prison, together with post-release control. Although Mother completed some programs during her incarceration, she was not able to complete all the objectives of her case plan. The evidence also reflected that Mother had been diagnosed with bipolar disorder, schizophrenia, and ADHD. There was testimony that Mother received treatment for her mental health issues and is taking medication.
 {¶ 5} Father already had an "open case" with CCDCFS regarding two children he had with another woman. He suffers from intellectual limitations caused by a severe head injury sustained when he was a child. Father completed a parenting class; however, the trial court found that because of his limitations, he was not able to derive much benefit from it. There was also evidence that during visits with D.C., Father did not take an active role in caring for D.C. and refused to change her diaper. At the hearing before the lower court, Father argued that legal custody be awarded to D.C.'s paternal grandmother ("Grandmother").
 {¶ 6} D.C. had been placed into the care of Grandmother on December 21, 2004. Grandmother was also the relative placement for Father's two other children. In February 2005, CCDCFS received an allegation that a nine-year-old half sibling was perpetrating abuse on other minor family members at Grandmother's home. There was also evidence that another son of Grandmother, who had been convicted of sex offenses against another family member, frequently visited her home. Grandmother stated that this son was allowed to visit as long as he was not left alone with any children, and she claimed she told CCDCFS about this son as early as January 2004. Additional concern was raised as to other members of the family. There was evidence that Father was in a sex offender program as a teenager. There was also a questionable incident involving Grandmother's husband and her sons. D.C. was removed from placement with Grandmother on March 11, 2005. Lynette Marsh, a social worker assigned to the case, testified that, although Grandmother's home was well maintained at the time D.C. was placed there, the conditions in the home deteriorated. Marsh discovered roaches in the home, and at the time of D.C.'s removal, D.C. had lice and was covered with flea bites. Further, when she was placed into a foster home, D.C. was discovered to have extensive bilateral ear infections. While Grandmother claimed D.C. did not have any flea bites on her body when she was removed, Grandmother admitted that she had a dog.
 {¶ 7} The foster mother testified that D.C. was receiving speech therapy and seeing a social worker for behavioral issues. Irene Walker, another social worker for CCDCFS, testified that visits between D.C. and her biological parents and Grandmother had gone well.
 {¶ 8} The psychological evaluation by the court clinic, written by Dr. Joseph Konieczny, indicated that Grandmother and her family had a very lengthy history of involvement with CCDCFS dating back to 1973. Past incidents included multiple allegations of sexual abuse involving various family members. Dr. Konieczny suggested in the report that Grandmother did not have a full appreciation and understanding of the special needs of D.C. or of the potential for harm to D.C. with regard to unsupervised contact with family members.
 {¶ 9} On April 8, 2005, CCDCFS filed a motion to modify temporary custody to permanent custody. CCDCFS later withdrew a previously filed motion to modify temporary custody to legal custody to Grandmother. On June 13, 2005, Grandmother filed a motion to modify custody and/or visitation, and subsequently sought to amend this motion.
 {¶ 10} Following a hearing on CCDCFS's motion to modify temporary custody to permanent custody, the trial court awarded permanent custody of D.C. to CCDCFS. Mother has appealed this decision.
 {¶ 11} Mother has raised one assignment of error for our review, which provides the following: "The trial court violated [Mother's] state and federal due process rights by terminating her parental rights to [D.C.] when the decision was against the manifest weight of the evidence."
 {¶ 12} Mother raises two issues under this assignment of error, challenging both the termination of her parental rights to D.C. and the denial of legal custody to Grandmother. We note that Grandmother has not filed an appeal.
 {¶ 13} In order for a juvenile court to terminate parental rights and grant permanent custody to a county agency, two requirements must be met. The trial court must find, by clear and convincing evidence in the record, (1) the existence of one of the conditions set forth in R.C.2151.414(B)(1)(a)-(d), and (2) that permanent custody is in the best interest of the child. In re C.W., 104 Ohio St.3d 163, 165-166,2004-Ohio-6411; In re S.B., Cuyahoga App. No. 85560, 2005-Ohio-3163. Clear and convincing evidence is "that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469.
 {¶ 14} In this case, the trial court found that the first requirement for awarding permanent custody was met because the condition under R.C.2151.414(B)(1)(d) was established. Specifically, the condition under R.C. 2151.414(B)(1)(d) states that "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." In this case, D.C. was removed from her parents' home on January 22, 2004 and was committed to the temporary custody of CCDCFS on April 1, 2004, and she had been continuously in their custody at the time CCDCFS moved for permanent custody on April 8, 2005. Mother does not challenge the trial court's finding, and our review reflects the finding was supported by clear and convincing evidence.
 {¶ 15} The primary challenge in this case involves the second requirement for awarding permanent custody, which is whether permanent custody is in the best interest of the child. R.C. 2151.414(D)(1)-(5) sets forth the following relevant factors that the juvenile court must consider in determining the best interest of the child:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether * * * [it] can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 16} Here again, a juvenile court must conclude by clear and convincing evidence that an assignment of permanent custody is in the best interest of the child. R.C. 2151.414(E). The court must consider all of the elements in R.C. 2151.414(D), as well as other relevant factors. The totality of the circumstances is to be considered, and no one element is given greater weight than the others pursuant to the statute. See In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513. On appeal, an appellate court must review the juvenile court's consideration of the factors under R.C. 2151.414(D) and determine if the court "satisfied its statutory duty." Id.
 {¶ 17} Our review of the juvenile court's opinion reflects that in determining the best interest of D.C. pursuant to R.C. 2151.414, the juvenile court properly considered all of the statutory factors. The court considered the interaction and interrelationship of D.C. with the relevant parties. The court found that the D.C. had not lived with her biological parents since she had been removed from the home on January 22, 2004 at five months of age. The court recognized that D.C. was removed because of domestic violence between the parents. Although the evidence showed that Mother appeared to genuinely love her child, the court found that the testimony did not establish a strong bond between the child and her biological family. The court also recognized that D.C. had been cared for by Grandmother; however, the court was concerned that D.C. had been removed from Grandmother's home because of allegations of sexual abuse involving various family members and the special needs of D.C. that required extensive care that Grandmother apparently did not fully appreciate. The court found that at the time D.C. was removed from Grandmother's home, D.C. had lice and was covered with flea bites.
 {¶ 18} With respect to the wishes of the child, the court considered that D.C. was only a two-year-old at the time of the hearing, and was therefore too young to form or express an opinion about her wishes. The court found that the custodial history weighed in favor of permanent custody. The court considered that D.C. had been in the temporary custody of CCDCFS for most of her short life and found that permanent custody would give the child the opportunity to be adopted by a stable family.
 {¶ 19} The court also recognized the need for a legally secure placement and found that this could not be achieved without the grant of permanent custody. The court found that the biological parents did not argue during trial that they were able to take custody of D.C. at that time or within a reasonable period of time, and both expressed a desire for D.C. to be placed in Grandmother's legal custody. The court recognized that CCDCFS had placed D.C. with Grandmother, but that D.C. had been removed from Grandmother's care for the reasons noted above.
 {¶ 20} In addition, the trial court considered the recommendation of the guardian ad litem, who actually recommended an extension of temporary custody. The court, however, disagreed with this recommendation "because it keeps the child in limbo waiting to see if either her mother or grandmother is capable of meeting her special needs and protecting her. The court finds the risk is too great that at the end of a six month extension for temporary custody, this child will be no closer to having an adequate permanent placement than she is now."
 {¶ 21} The court determined that D.C. could not and should not be placed with either parent within a reasonable period of time. The court recognized that Mother genuinely loved D.C. and desired what she felt was best for her child. However, the juvenile court found that, for Mother, taking care of her own life would be as much as she could handle.
 {¶ 22} The court considered that Mother had been convicted of numerous criminal charges, had violated probation, and had been incarcerated. She also had been diagnosed with several mental disorders. Although she successfully completed some programs, she did not complete the case plan. The court also found Father's intellectual limitations rendered him incapable of caring for D.C. and her special needs, and that he and his guardian ad litem had not disputed this. The court also recognized the parents' desire to have D.C. placed with Grandmother; however, for the reasons already noted herein, the court found that CCDCFS had demonstrated that Grandmother was not a suitable placement for the child.
 {¶ 23} The court ultimately concluded that D.C. was to be committed to the permanent custody of CCDCFS for purposes of adoption and terminated the parental rights of Mother and Father.
 {¶ 24} We are mindful that Mother loves her child and that Grandmother cared for D.C. and that visits with D.C. had apparently gone well. Nevertheless, this court has previously stated, "the mere existence of a good relationship is insufficient. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship."In re R.N., Cuyahoga App. No. 83121, 2004-Ohio-2560, citing In reHolyak (July 12, 2001), Cuyahoga App. No. 78890.
 {¶ 25} Mother asserts that she completed many of the programs on her case plan and points to the testimony of CCDCFS social worker, Irene Walker, who indicated Mother would need at least six months to complete the objects on her case plan and opined that Mother would "give it her best shot." Mother claims that the evidence presented established D.C. could be placed with her within a reasonable time. Mother also states that CCDCFS did not attempt to implement a safety plan to prevent the removal of D.C. from Grandmother's home or take any of the steps recommended by Dr. Joseph Konieczny in his psychological evaluation report. We do not find that providing Mother additional time to complete her plan or requiring CCDCFS to implement a safety plan was necessary for the determination in this matter.
 {¶ 26} It is clear from the record that upon the juvenile court's consideration of the best interest of the child, the court was clearly concerned with providing D.C. a safe and stable environment. The court was concerned with Mother's criminal history and history of domestic violence, her mental problems, and the challenges Mother faced taking care of her own life. The court was also concerned with the suggested inability of Grandmother to care for the special needs of D.C., as well as the environment of Grandmother's home and the history of sexual abuse involving members of her family, including those who frequented the home. Indeed, this court has previously recognized that "a child's best interests require permanency and a safe and secure environment." In reT.W., Cuyahoga App. Nos. 86084, 86109, 86110, 2005-Ohio-6633, citingIn re Holyak (July 12, 2001), Cuyahoga App. No. 78890 and In reT.W., Cuyahoga App. No. 85845, 2005-Ohio-5446. The evidence in this case supported a finding that a safe and secure environment could not be provided by Mother or Grandmother.
 {¶ 27} We conclude the juvenile court satisfied its statutory duty and find no error in its determination to grant permanent custody of D.C. to CCDCFS and terminate the parental rights of Mother. Mother's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P. J., CONCURS;
PATRICIA ANN BLACKMON, J., CONCURS IN JUDGMENT ONLY