[Cite as *In re R.M.*, 2013-Ohio-4928.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 99809, 99810, and 99811**

# IN RE: R.M., ET AL.
# Minor Children

[Appeal By Ramon M., Father]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-09905894, AD-09905896, and AD-09905897

**BEFORE:** Celebrezze, P.J., S. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** November 7, 2013

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio   44103


**ATTORNEYS FOR APPELLEE, C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Michelle A. Myers
Assistant Prosecuting Attorney
Cuyahoga County Department of Children and Family Services
4261 Fulton Parkway
Cleveland, Ohio 44144


**GUARDIAN AD LITEM**

Carla Golubovic
P.O. Box 29127
Parma, Ohio   44129

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, Ramon M. ("father"), father of the three children involved in this consolidated appeal, challenges the trial court's grant of permanent custody to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Father asserts the trial court's decision is not supported by competent, credible evidence, and he was denied effective assistance of counsel. After a thorough review of the record and law, we affirm.

## I. Factual and Procedural History

{¶2} In early 2009, CCDCFS filed for protective supervision of three children, R.M., N.H., and J.H., who were in the care of their mother, T.H. ("mother"). CCDCFS took temporary custody of the children on August 10, 2010, after mother demonstrated significant and troubling behavioral issues. The three children were placed together in a foster home, and a guardian ad litem ("GAL") was appointed. Mother did not progress on her case plan and eventually stopped visiting her children.

{¶3} Father's paternity was established on May 3, 2011, according to CCDCFS records. Prior to that, he had not participated in the children's case plan. That is not surprising considering mother told him he was not the father of any of the children. CCDCFS developed a case plan for father, which included maintaining "a lifestyle free of mood altering chemicals" with drug testing to ensure compliance, securing appropriate housing and employment or other financial resources to care for the children,

appropriately care for his own health in light of a recent mild stroke so that he may be an effective caregiver for the children, and parenting classes to understand and address the special needs of the children. CCDCFS moved to add father to the case and submitted his case plan to the court on June 13, 2011.

{¶4} Mother did not progress on her case plan throughout the period of temporary custody. She continued to test positive for drugs or refused to provide samples. She was confrontational and abusive toward case workers and the children. The children were diagnosed with post-traumatic stress disorder and adjustment disorders. They exhibited highly sexualized behavior atypical for children of such young age.

{¶5} As a result of father's addition to the case, CCDCFS twice moved for and received extensions of temporary custody to give father the opportunity to work toward attaining custody of the children. An updated GAL report was submitted to the court on September 2, 2011. Throughout this time, the CCDCFS status reports indicated father was visiting the children regularly and was attempting to remedy certain deficiencies to become a suitable caregiver for the children. However, the April 6, 2012 CCDCFS review indicates father tested negative for drugs but stopped providing samples in December 2011. A hair follicle test was sought in March 2012, but father did not provide a sample. The June 22, 2012 CCDCFS case plan review indicated father tested positive for cocaine in April 2012 after the court ordered him to provide a sample. Later case plan reviews also indicated father did not complete a substance abuse assessment and would not submit to further drug testing. The July case review also indicates that

father lacked adequate housing because he lived with his mother and adult daughter and the children could not reside there. This document also indicated CCDCFS's decision to move for permanent custody because:

(1) The children have been in agency custody for two years (August 10, 2010) and they are in need of permanency. (2) Reunification with mother is not possible * * * (4) Father is reportedly not in a position to assume full responsibility of his children. He lacks income and independent housing. He currently resides with his adult daughter and mother, but his daughter is unwilling to have the children reside with them. (5) Father's hair sample in April 2012 revealed that he was positive for cocaine. He denies using cocaine and he has not made an appointment for a reassessment. He has not provided a urine screen since 5-4-12, which was negative. (6) The [social worker] has explored relatives and there are not any willing or able to assume care of the children. * * *.

{¶6} On July 19, 2012, CCDCFS filed for permanent custody. A hearing was set for January 3, 2013. The GAL filed a report on that date where she recommended permanent custody in favor of CCDCFS. A hearing was held where social worker Deanna Shuster testified, but a decision was delayed until after the results of father's social security disability benefits hearing. On February 20, 2013, the parties reconvened, and father's attorney indicated the court should make its decision with no further evidence when specifically asked about the benefits hearing. The implication is that father was again denied social security benefits. The court granted CCDCFS's motion for permanent custody, and father appealed assigning two errors:

I. The termination of [Father's] parental rights and the award of permanent custody to CCDCFS was against the manifest weight of the evidence and constitutes a denial of due process of law. Fourteenth Amendment, Constitution of the United States; Article I, § 16, Constitution of the State of Ohio.

II. [Father] received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 16, of the Constitution of the State of Ohio.

## II.  Law and Analysis

## A. Permanent Custody

{¶7} R.C. 2151.414 provides the authority for an award of permanent custody of a child to the state. Under the statute, the court should grant permanent custody to the state if it determines, by clear and convincing evidence, that (1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors enumerated in R.C. 2151.414(D); and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, pursuant to at least one of the factors listed in R.C. 2151.414(E).

{¶8} Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence' but not to the extent of such certainty required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987).

{¶9} In spite of the gravity that the termination of parental rights has, "our review is deferential.  If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment

and not substitute its judgment for that of the trial court." *In re Winland*, 5th Dist. Muskingum No. CT2008-0030, 2008-Ohio-6476, ¶ 34, citing *In re Myers III*, 4th Dist. Athens No. 03CA23, 2004-Ohio-657, ¶ 7. The trial court is, after all, in a better position to judge the credibility of witnesses and weigh the evidence. *In re Ohler*, 4th Dist. Hocking No. 04CA8, 2005-Ohio-1583, ¶ 15, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶10} Thus, we must look to the entire record to determine whether the trial court had sufficient evidence to clearly and convincingly find that it was in the children's best interest to be placed in the permanent custody of CCDCFS and that they could not or should not be placed with father within a reasonable period of time. After a thorough review of the evidence, we conclude that the trial court's judgment was based on sufficient evidence.

{¶11} All three children were in the custody of CCDCFS for over 12 consecutive months. Therefore, permanent custody may be granted under R.C. 2151.414(B)(1)(d) if it is shown by clear and convincing evidence that it is in their best interests.

### i. Best Interest Determination

{¶12} In determining the best interest of the child during a permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D)(1), which include (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers; (b) the wishes of the child as expressed themself or through a guardian ad litem; (c) the custodial history of the child;

and (d) the child's need for a legally secure permanent placement. [1]   R.C. 2151.414(D)(1)(a) through (d).

{¶13} R.C. 2151.414(D)(1) does not require the trial court to find that each best interest factor applies, only that it consider each one. *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993).   One factor enumerated in R.C. 2151.414(D) is not given greater weight than the others. *Id*. at ¶ 56.   This court has "consistently held that only one of the factors set forth in R.C. 2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights." *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 56. *See also In re P.C.*, 8th Dist. Cuyahoga Nos. 90540 and 90541, 2008-Ohio-3458, ¶ 31, citing *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 34.

{¶14} Here, the court indicated it considered all of these factors and stated that it determined that the GAL recommended permanent custody to CCDCFS. Also, the record supports findings that the custodial history of the children indicates a need for permanent custody because the children have been in CCDCFS's custody for more than two consecutive years.   R.C. 2151.414(D)(1)(c). This also implicates R.C. 2151.414(D)(1)(d) and the children's need for a permanent, secure placement.

{¶15} R.C. 2151.414(D)(2) also *requires* that a court grant permanent custody to the state if four factors are met:

---

[1]  An additional factor exists in R.C. 2151.414(D)(1)(e), but no element of it is satisfied in this case.

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶16} R.C. 2151.414(D)(2)(a) requires the court to consider factors in R.C. 2151.414(E) to determine whether the children cannot be placed with a parent within a reasonable time or should not be placed with either parent.

{¶17} R.C. 2151.414(E) lists factors the court should consider in arriving at what is in the best interest of the child and, according to R.C. 2151.414(C), without consideration of the impact the decision will have on a parent. In relevant part, these include:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

* * *

(16) Any other factor the court considers relevant.

{¶18} The court need only find that one of these circumstances is supported by clear and convincing evidence to justify the conclusion that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 56. Here, there is substantial evidence in the record going to each of the first four factors set forth above.

{¶19} Pursuant to R.C. 2151.414(D)(2)(a), the court found that placement with father was not appropriate. Despite diligent efforts toward reunification, father was not a suitable placement option. Although father had made some progress on his case plan, he failed to participate in parenting classes that addressed the specific individualized mental

health needs of his children, did not adequately supervise the children during visitation, and failed to attend any of the visitation opportunities outside the normal visitation schedule set up by CCDCFS. He also failed to secure adequate housing, complete substance abuse assessments or comply with drug testing regimens, secure adequate sources of income to provide for the children, and demonstrate that he was able to care for them in light of certain physical limitations father possesses.

{¶20} The testimony at trial from social worker Shuster indicated father initially complied with regular drug screening. However, after December 2011, father ceased providing samples with the exception of a May 2012 sample. A hair test was ordered in April 2012, which resulted in a positive test for cocaine. Father gave one more urine sample in May 2012, but did not provide any further samples. Father also did not complete a substance abuse reassessment recommended after the positive drug test.

{¶21} Father did not secure adequate housing by the hearing date. In July 2012, he told Shuster he had secured a home, but it needed to be remodeled. Whenever housing was discussed, he always stated it was a few weeks to a month away from being livable. However, his housing status had not changed since that time, and he never provided Shuster with a moving date or made the property available for inspection. Father also had not secured employment or other financial means to care for the children.

{¶22} According to R.C. 2151.414(D)(2)(b), the court must find that the children had been in agency custody for more than two years and no longer qualify for temporary custody. Here, the children were in custody for more than two years. The record shows

that the children no longer qualified for temporary custody. R.C. 2151.415(D)(4) only allows two extensions of temporary custody, which were previously granted in this case.

{¶23} The children in this case do not meet the parameters of a planned permanent living arrangement as set forth in R.C. 2151.353(A)(5).

{¶24} Finally, no suitable relative filed a motion for legal custody. Shuster discussed the paternal grandmother as a possible placement alternative during trial, but she did not have adequate housing and did not file a motion for legal custody.

{¶25} Therefore, according to R.C. 2151.414(D)(2), the trial court was required to award permanent custody to CCDCFS.

{¶26} Father argues that the record indicates he progressed on his case plan, attended substantially all of his scheduled visits, and maintained a strong relationship with the children. He asserts that the award of permanent custody is against the manifest weight of the evidence. However, "R.C. 2151.414(D) does not require courts to deny a children services agency's motion for permanent custody solely by virtue of a parent's substantial compliance with the case plan." *In re D.S.*, 10th Dist. Franklin Nos. 07AP-479 and 07AP-485, 2007-Ohio-6781, fn.1. *See also In re T.W.*, 10th Dist. Franklin Nos. 10AP-897, 10AP-898, and 10AP-899, 2011-Ohio-903, ¶ 55.

{¶27} Father did take steps to address issues outlined in the case plan, but the record supports the conclusion that he failed to secure adequate housing and a source of income to support the children or to take advantage of programs set up by CCDCFS that would equip him with the tools to care for children with significant behavioral and

psychological issues.  The permanent custody determination made by the trial court based on the best interest of the children is supported by clear and convincing evidence. This assignment of error is overruled.

## B.  Ineffective Assistance of Counsel

{¶28} Father argues that his counsel failed to effectively represent him in this matter, depriving him of a constitutionally guaranteed right.

{¶29} To establish ineffective assistance of counsel, an appellant must demonstrate that the lawyer's performance fell below an objective standard of reasonable performance and that he was prejudiced by that deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986). An appellant must show that, but for the lawyer's deficient performance, the outcome of the hearing would have been different.  *Id*.

{¶30} An attorney is assumed to perform his duties ethically and competently. *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976).  In addition, we will not second guess strategic decisions of trial counsel, at least insofar as they are reasonable. *Strickland* at 689; *State v. Hughbanks*, 1st Dist. Hamilton No. C-980595, 1999 Ohio App. LEXIS 5789 (Dec. 3, 1999).

{¶31} Father attacks the performance of trial counsel.  He claims that a short opening and closing statement, failure to call father as a witness, and failure to highlight the children's paternal grandmother as a possible relative willing to take custody of them constitute deficient performance.

**{¶32}** At trial, father's attorney secured a continuance of the decision pending the outcome of a social security benefits hearing. He also thoroughly cross-examined CCDCFS social worker Shuster, illustrating father's successes and minimizing any perceived failings regarding the case plan. It is true that trial counsel did not call father to testify, but this court does not know whether father made that decision. Further, this is a decision that constitutes trial strategy that generally may not form the basis of an ineffective assistance claim. Father had a lengthy history of criminal convictions, which may have been damaging to his case if cross-examined. Father also had tested positive for cocaine and failed to provide samples for testing on numerous occasions. Questions on cross-examination about these and other issues may have been more damaging than the remainder of father's testimony. This speculation is exactly why calling father as a witness should not be the basis for an ineffective assistance claim. *Strickland* at 689. There are many valid reasons in this case to leave father off the stand.

**{¶33}** The allegation that there were other suitable family members who would take custody is also contradicted in the record. Father argues that the paternal grandmother indicated a desire to take custody of the children. However, this was discussed during Shuster's testimony. The grandmother initially indicated a willingness to take the children, but she did not have adequate housing, and she did not follow through by filing a motion for legal custody.

**{¶34}** Even if appellant could satisfy the first prong of the test here, the second prong of the *Strickland* test cannot be met. Father points to the GAL's statements made

at the hearing that indicated it was a difficult case because father was a good person who had an appropriate relationship with the children. But none of this addressed father's inability to demonstrate he could care for the children physically or financially, or that he maintained a life free of substance abuse in light of his refusal to provide samples after a positive test for cocaine. Further, R.C. 2151.414(D)(2) required the court to grant permanent custody to CCDCFS. Therefore, no prejudice resulted from the perceived inadequacies of trial counsel.

## III. Conclusion

**{¶35}** Father failed to adequately address significant portions of his case plan, including securing a means to support the children, providing adequate housing, and a lack of dependence on substances of abuse. The trial court's award of permanent custody to CCDCFS was supported by clear and convincing evidence. Trial counsel was also not constitutionally ineffective.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
TIM McCORMACK, J., CONCUR