[Cite as *In re E.W.*, 2014-Ohio-2534.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100473 and 100474**

# IN RE: E.W. and M.W.
# Minor Children

## [Appeal By A.L., Mother]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 11917562 and AD 11917563

**BEFORE:** Kilbane, J., Jones, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** June 12, 2014

**ATTORNEY FOR APPELLANT/MOTHER**

Betty C. Farley
17316 Dorchester Drive
Cleveland, Ohio 44119

**ATTORNEY FOR APPELLEE/C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor
Amy L. Carson
Assistant County Prosecutor
C.C.D.C.F.S.
8111 Quincy Avenue
Cleveland, Ohio 44104

MARY EILEEN KILBANE, J.:

**{¶1}** Appellant-mother, A.L., appeals from the order of the juvenile court that denied a family member's motion for legal custody of the children and awarded permanent custody to the Cuyahoga Department of Children and Family Services ("CCDCFS").

**{¶2}** Having reviewed the trial court record, transcripts, and relevant case law, we affirm.

**{¶3}** On October 4, 2011, following the receipt of information on the KIDS telephone hotline, CCDCFS social worker, Cassandra Jones ("Jones"), went to A.L's home and found her to be intoxicated and unable to pick up her children, E.W. (d.o.b. 8-18-06) and M.W. (d.o.b. 8-12-07), who were at school. The social worker assisted her with picking up the children and scheduled an emergency staffing.

**{¶4}** On or about October 5, 2011, an emergency staffing was held in the matter. However, A.L.'s mother and the children's maternal aunt, Z.A., walked out of the staffing. No suitable relatives were available to care for the children, and CCDCFS obtained an ex-parte telephonic order removing the children from the home in accordance with R.C. 2151.31(A)(3). Also on October 5, 2011, CCDCFS filed a complaint for neglect and temporary custody, alleging that

1. On October 4, 2011, the social worker went to the mother's home and found her under the influence of drugs and alcohol. The mother was so intoxicated that the social worker had to assist her in walking to the school to pick up her daughter.
2. Mother has a severe substance abuse problem, specifically marijuana, alcohol, and PCP, that prevents her from providing appropriate care to her children.

3.      The mother has been unable to maintain stable housing.

4.      Mother has had 3 other children removed from her care and placed in legal custody of relatives due to her substance abuse problem. (*See* AD 00901894-95 & AD 05900890).

5.      The father of the children does not support or visit with his children.

6.      The father has an extensive criminal history and is currently incarcerated on charges of grand theft. He is scheduled to be released on April 30, 2012. (*See* CR-10-544234-A).

**{¶5}** The children were committed to the emergency custody of CCDCFS on October 6, 2011, and were placed in foster care. At a hearing on December 21, 2011, the allegations were amended to provide that the social worker found A.L. to be intoxicated on October 4, 2011, she is in need of substance abuse treatment, and three of her other children are in the legal custody of other family members. A.L. admitted the amended allegations of neglect. The components of A.L.'s case plan for reunification were also read into the record, including that she obtain chemical dependency assessment and treatment and a mental health evaluation.

**{¶6}** On December 22, 2011, the trial court concluded as follows:

The Court finds that the CCDCFS has made reasonable efforts to prevent placement. Father is incarcerated. Mother has received mental health and substance abuse evaluation. Mother is currently in an intensive out-patient treatment program. Mother attends AA meetings. Mother has random urine screens. Mother's last urine screen was positive for marijuana.

* * *

The Court finds that [the children's] continued residence in or return to the home would be contrary to [their] best interests and welfare.

The Magistrate finds that [the children] cannot be placed with relatives for

the following reasons:

No relatives are willing and able to provide substitute care.

The children were placed in the temporary custody of the CCDCFS.

**{¶7}** On January 10, 2012, the court appointed a guardian ad litem ("GAL") for the children. A.L.'s family subsequently approached T.G. to become the children's foster mother. The family considered T.G. to be a close family member, although not a blood relative. T.G. agreed to do so and completed the requirements to become a kinship care provider. On June 7, 2012, the CCDCFS placed the children with T.G. as a kinship caregiver. On September 5, 2012, the GAL submitted a report stating that the children were happy and healthy in the placement with T.G., and recommended that this placement could become permanent if A.L. did not complete her case plan services. The GAL also urged the court to extend the order of temporary custody because A.L. was in substance abuse treatment and working on her case plan. On October 9, 2012, the trial court held a review of the matter and extended the order of temporary custody.

**{¶8}** On January 17, 2013, CCDCFS filed a motion to modify the temporary custody award to permanent custody. CCDCFS asserted that A.L. has failed to obtain and maintain sobriety, is not consistent in obtaining treatment for her depression, has no income, relies on family for housing, and lacks the ability to provide for the basic needs of the children. CCDCFS also asserted that the father lacks stable and appropriate housing, has no source of income, and fails to visit consistently with his children. On March 12, 2013, the GAL submitted a report recommending continuing the order of

temporary custody and that the children undergo counseling.

{¶9} On August 12, 2013, A.L. filed a motion for the trial court to award legal custody of the children to Z.A., asserting that she is a suitable relative who is ready, willing, and able to care for the children and it would be in their best interest for her to do so. This motion was filed 22 months after Z.A. walked out of the staffing, and 14 months after T.G. became a kinship care provider at the request of A.L.'s family. A.L. maintained that Z.A. signed a statement of understanding acknowledging the responsibilities of legal custody and is prepared to undertake them, she has safe and appropriate housing, and is able to provide for the children. The matter proceeded to hearing before a judge on August 19, 2013.

{¶10} For its evidence, CCDCFS presented the testimony of social worker Kina Crowder ("Crowder") who testified that A.L.'s mother and Z.A. attended the emergency staffing but walked out as issues were being discussed. The children were then placed in emergency custody with foster parents. The trial court outlined the terms of the case plan at the adjudication hearing. The father, who was incarcerated, was offered various services through a jail liaison with additional services upon his release. Ultimately, however, he did not obtain stable housing, did not consistently visit the children, and did not complete his case plan requirements.

{¶11} Crowder further testified that A.L. has three other children but is not raising any of them. The case plan required her to obtain stable housing, address her mental health needs, and obtain treatment for her drug and alcohol dependency. According to

Crowder, in September 2012, A.L. started to address her case plan services, and therefore, CCDCFS asked the trial court to extend the order of temporary custody. Ultimately, however, she did not attend treatment as required, failed to appear for some random drug screens, and continued to test positive for drug use. She was no longer in treatment as of the date of the hearing. In addition, she does not consistently keep her weekly visitation schedule.

{¶12} Crowder next stated that A.L. asked if the children could be placed with T.G. who is a relative (but not related by blood) and a certified foster care provider. T.G. completed the kinship caregiver approval process and the children were placed with her on June 7, 2012. According to Crowder, the children have special needs, are acting out, and they are in counseling. They have some struggles at school and both have been diagnosed with post-traumatic stress disorder. Their behavior has improved significantly while with T.G., and they have bonded with her. T.G. initially supervised A.L.'s visitation with the children, but by February 2013, A.L.'s visitation became inconsistent, and the visits were moved to CCDCFS. A.L. stopped visiting with the children in June 2013, but resumed visitation again in August 2013.

{¶13} Crowder additionally testified that Z.A. has also asked for legal custody of the children; however, during the emergency staffing, she walked out as issues were being discussed. Z.A. expressed an interest in legal custody again in April 2013, but she did not follow through with meeting the various requirements until June 2013. In addition, at the inspection conducted on April 16, 2013, Crowder determined that Z.A.'s

house could not accommodate the children because she had no beds for them, no fire extinguisher, no smoke alarms, and no posted emergency information.

{¶14} T.G. testified that she grew up with A.L.'s family, and they are cousins but not related by blood. T.G. testified that Z.A. asked her to take custody of the children so that they would not have to stay in foster care. T.G. testified that she agreed and became a licensed kinship care provider for the children on June 7, 2012. Following that placement, T.G. supervised A.L.'s visits, but stopped because she did not want to monitor A.L.'s behavior during the visits. At that point, visitation was moved to CCDCFS. T.G. denied telling A.L. and Z.A. that they are forbidden from visiting the children, and if she is permitted to adopt them, she will allow them to have continued contact with their family. T.G. also testified that A.L. recently bought them school uniforms and also bought them toys for their birthdays. However, the father does not visit or provide support for the children. With regard to Z.A.'s care of the children, T.G. stated that she is concerned about who might be watching them because there is a lot of activity at her home.

{¶15} Z.A. testified that she has five children and lives in a two-bedroom apartment. She is employed full time by University Hospital. She asked Crowder about obtaining legal custody of the children and was informed that she would have to be fingerprinted. She acknowledged that she delayed doing so, but she stated that Crowder told her that required paperwork had not yet been completed. The required home study was completed on August 16, 2013. Z.A. acknowledged that she had not visited the

children since February 2013, but she explained that her work schedule interfered with her attempts to visit. If awarded legal custody, she would arrange for appropriate childcare.

{¶16} Lawrence Glenn ("Glenn"), a social worker with the Juvenile Division of the Cuyahoga County Public Defender's Office, testified that he conducted an inspection of Z.A.'s house on August 16, 2013. Proceeding from a standard checklist that examines safety concerns, financial status, utility service, and proof of residency. He then advised her to obtain beds for the children, smoke detectors, and outlet plugs.

{¶17} In an order dated August 23, 2013, the trial court awarded permanent custody of the children to CCDCFS. The court noted that they had been in the temporary custody of CCDCFS for more than 12 months, the GAL recommended that the CCDCFS be awarded permanent custody, and there is clear and convincing evidence that the children cannot be placed with their parents within a reasonable time. The court also found:

> Mother has a chemical dependency that is so severe that it makes the mother unable to provide an adequate permanent home for the child at the present time, and as anticipated, within one year * * *.
> Mother has had parental rights terminated involuntarily with respect to a sibling of the child.[1]

> A maternal Aunt was proposed as a legal custodian. This proposed

---

[1]Although the record indicates that three of A.L.'s children are in the legal custody of other family members, there is no basis in the record from which to conclude that she has lost permanent custody of them. Therefore, we interpret this statement to mean that A.L.'s parental rights have been terminated as to both E.W. and M.W.

custodian has no beds, no fire extinguishers, no smoke detectors, no posted escape plan and no posted emergency phone numbers. The home is not suitable for the child.

**{¶18}** Appellant assigns three errors for our review:

The CCDCFS failed to show by clear and convincing evidence that permanent custody is in the minor children's best interests.

The CCDCFS failed to comply with R.C. 2151.412(G) in that the children were not placed in the legal custody of a suitable family member.

The trial court's decision to deny A.L.'s motion for legal custody of the children to [Z.A.] was not based on a preponderance of the evidence and, therefore, constitutes an abuse of discretion.

## Award of Permanent Custody

**{¶19}** An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re M.J.,* 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24.

**{¶20}** In order to terminate parental rights and grant permanent custody to CCDCFS, the court must apply a two-prong test. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 23. First, the court must find by clear and convincing evidence one of the factors set forth in R.C. 2151.414(B)(1). Second, the court must determine, by clear and convincing evidence, that it is in the best interest of the child to terminate parental rights. R.C. 2151.414(B)(2).

**{¶21}** The factors under R.C. 2151.414(B)(1) include: (a) the child cannot be

placed with either parent within a reasonable period of time or should not be placed with either parent; (b) the child is abandoned; (c) the child is orphaned and no relatives are able to take permanent custody of the child; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period.   This court has "consistently held that only one of the factors set forth in R.C. 2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights." *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 56. *See also In re P.C.*, 8th Dist. Cuyahoga Nos. 90540 and 90541, 2008-Ohio-3458, ¶ 31, citing *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 34; *In re R.M.*, 8th Dist. Cuyahoga Nos. 99809, 99810, and 99811, 2013-Ohio-4928, ¶ 13.

{¶22} In addition, R.C. 2151.414(E) sets forth the elements necessary to satisfy an R.C. 2151.414(B)(2) determination, by clear and convincing evidence, that the child cannot or should not be placed with his parents within a reasonable time, and provides in relevant part:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.   In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic * * * chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued * * *.

* * *

(16) Any other factor the court considers relevant.

**{¶23}** The existence of one factor alone will support a finding that the child cannot be reunified with the parents within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738; *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50.

**{¶24}** With regard to the requirement that it is in the best interest of the child to terminate parental rights, R.C. 2151.414(D)(1)(a) through (e) set forth the relevant factors a court must consider in determining the best interest of the child, and include, but are not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and

any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶25} Only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re D.W.*, 8th Dist. Cuyahoga No. 98717, 2013-Ohio-272; *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993); *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854.

{¶26} In this case, the trial court found, by clear and convincing evidence, that it is in the best interest of the children to grant permanent custody to CCDCFS, they cannot be placed with their parents within a reasonable time or should not be placed with either parent, and determined that permanent custody is in the children's best interest.

{¶27} The court found that the children have been in temporary custody for over two years. The court further determined that they cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. In relevant part, the court concluded that the evidence established that A.L. has not completed case plan services, has severe chemical dependency, does not have her own housing, is not

employed, has not addressed her mental health issues, and is unable to provide an adequate permanent home for the children. The court also outlined each parent's difficulties with parenting and with completing their case plan requirements and concluded that A.L. failed continuously and repeatedly to substantially remedy those conditions and demonstrated a lack of commitment to provide an adequate permanent home for the children. In addition, the record demonstrates that although the children were brought to CCDCFS for weekly visitation with A.L., from February 2013 forward, she had visited with the children only twice, on June 12, 2013 and August 13, 2013, and otherwise failed to meet with them or call CCDCFS to say that she would not attend visitation. The court also noted the children's psychological issues, and that the foster mother is taking them to counseling.

{¶28} Based upon all of the evidence of record, the juvenile court's termination of parental rights and award of permanent custody to CCDCFS is supported by clear and convincing evidence and meets the requirements of R.C. 2151.414. Although A.L. has visited with her children and has a genuine desire for the children to remain within her family, the evidence clearly and convincingly indicates that she cannot provide a legally secure permanent placement for E.W. and M.W. and that they cannot be placed with her within a reasonable time. Therefore, based upon our thorough review of the record, the trial court properly terminated parental rights and awarded permanent custody of E.W. and M.W. to CCDCFS. Accordingly, the first assignment of error is without merit.

Suitable Family Member

**{¶29}** In ruling upon a motion for permanent custody under R.C. 2151.414, the trial court must weigh of all the relevant factors in determining a child's best interests. R.C. 2151.414(D)(1). Although family unity and "blood relationship" are important factors in determining the best interest of a child, neither of these factors is controlling. *In re T.W.*, 8th Dist. Cuyahoga Nos. 86084, 86109, and 86110, 2005-Ohio-6633, ¶ 15. Further,

> [t]he statute does not make the availability of a placement that would not require a termination of parenting rights an all-controlling factor [and] does not even require the court to weigh that factor more heavily than other factors.

*In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. *See also In re J.B.*, 8th Dist. Cuyahoga Nos. 98518 and 98519, 2013-Ohio-1703, ¶ 31. Rather, this court has recognized that a child's best interests require permanency and a safe and secure environment. *In re T.W.*, 8th Dist. Cuyahoga Nos. 86084, 86109, and 86110, 2005-Ohio-6633, citing *In re T.W.*, Cuyahoga App. No. 85845, 2005-Ohio-5446.

**{¶30}** In this matter, the trial court considered Z.A.'s motion for legal custody and stated:

> A maternal aunt was proposed as a legal custodian. This proposed custodian has no beds, no fire extinguishers, no smoke detectors, no posted escape plan and no emergency phone numbers. The home is not suitable for the [children.]

**{¶31}** The record also indicates that Z.A. left the emergency staffing, did not seek custody of the children until after they had already been in foster care and kinship care with T.G., had not visited with the children since February 2013, was not prompt in

completing the screening requirements for legal custody, and did not have beds for the children. Although family unity and "blood relationship" are, in general, important factors in determining the best interest of a child, and Z.A. clearly expressed care for the children, this factor was not controlling herein. The award of permanent custody to CCDCFS was not an abuse of discretion as it met the goals of providing permanency and a safe and secure environment.

{¶32} The second and third assignments of error lack merit.

{¶33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
PATRICIA A. BLACKMON, J., CONCUR