JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant A.N. ("appellant") appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, that awarded permanent custody of appellant's minor son to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons stated below, we affirm.
 I {¶ 2} On May 13, 2002, CCDCFS refiled its complaint[1]
alleging neglect and seeking temporary custody of the minor child, R.N. (d.o.b. 7/3/89). On June 4, 2002, R.N. was adjudicated as dependent, and the matter was continued for dispositional hearing.
 {¶ 3} On August 5, 2002, the dispositional hearing commenced and CCDCFS moved for temporary custody. At the hearing, it was established that appellant had completed a four-month parenting program, but that appellant would need continuous supervision in order to provide R.N. with adequate care. Further, although it was indicated that appellant was taking medication, there was doubt as to her consistency. At the conclusion of the hearing, the trial court awarded temporary custody to CCDCFS.
 {¶ 4} On September 19, 2002, CCDCFS filed a motion to modify temporary custody to an order of permanent custody. Following the appointment of an attorney and a guardian ad litem for appellant, a hearing was held on February 26, 2003 to find whether or not CCDCFS had made reasonable efforts to finalize the permanency plan for the child. Following this hearing, the court concluded all reasonable efforts had been made.
 {¶ 5} On May 28, 2003, the case proceeded on CCDCFS' motion for permanent custody. Upon hearing the evidence, the court awarded permanent custody of R.N. to CCDCFS.[2] It is from this decision that appellant advances two assignments of error for our review.
 II {¶ 6} In her first assignment of error, appellant argues that "the trial court erred when it granted the motion for permanent custody."[3] We disagree.
 {¶ 7} In order for a child to be placed in the custody of an agency, the trial court must first determine the existence of one of four conditions, namely:
"1) The child is not abandoned or orphaned or has not been intemporary custody of one or more public children servicesagencies or private child placing agencies for twelve or moremonths of a consecutive twenty-two month period ending on orafter March 18, 1999, and the child cannot be placed with eitherof the child's parents within a reasonable time or should not beplaced with the child's parents.
 2) The child is abandoned.
 3) The child is orphaned, and there are no relatives of thechild who are able to take permanent custody.
 4) The child has been in the temporary custody of one or morepublic children services or private child placing agencies fortwelve or more months of a consecutive twenty-two month periodending on or after March 18, 1999."
 {¶ 8} R.C. 2151.414(B)(1).
 {¶ 9} R.C. 2151.414(B) provides that once any of the above conditions exist, a court may award permanent custody of a child to an agency if the court determines, by clear and convincing evidence,[4] that it is in the best interest of the child.In re Joseph Holyak (July 12, 2001), Cuyahoga App. No. 78890.
 {¶ 10} In determining the best interest of the child, the court must consider all relevant factors including, but not limited to, those contained in R.C. 2151.414(D). These factors include the interaction of the child with the parent(s), siblings and foster parents, the wishes of the child, the custodial history of the child, and the child's need for legal secure permanent placement. R.C. 2151.414(E) sets forth factors that are relevant to the determination of the child's best interest.[5]
 {¶ 11} Reviewing the record and all relevant factors, we find the trial court had clear and convincing evidence in which to determine that granting permanent custody to the state was in the best interest of the child.
 III {¶ 12} Appellant argues that the court failed to consider whether R.N. could be placed in her custody within a reasonable period of time. R.C. 2151.414(E). We find this argument is without merit.[6]
 {¶ 13} Specifically, appellant argues that the court failed to find any of the conditions enumerated under R.C. 2151.414(E). She argues that she has completed a four-month parenting program, has her medical condition under control, has maintained suitable housing, and is financially able to support R.N. and herself. Despite appellant's achievements, the court found clear and convincing evidence upon which to find R.N. could not be placed with appellant within a reasonable time. We agree with the trial court.
 {¶ 14} The trial court found that appellant has failed to substantially remedy the conditions causing the child to be placed outside the home. R.C. 2151.414(E)(1). In September 2001, CCDCFS social worker, Laurie Lisaula ("Lisaula"), met with appellant to discuss her case plan. This plan included classes on parenting and emotional stability, paternity establishment, home maintenance, and "child characteristics."[7] In October 2001, appellant was evicted from her home. Appellant's case manager, Gracie Fitzgerald ("Fitzgerald"), explained in a letter to Lisaula that appellant was evicted following repeated warnings from her landlord of allowing crackheads and prostitutes use of the apartment.
 {¶ 15} Regarding appellant's financial situation, she testified that she receives $66 a month in food stamps and almost $700 from Social Security. Of this amount, $435 went toward rent, with the remainder being applied to utilities and daily expenses. Appellant testified that at the time of the permanent custody hearing, the gas in her home was turned off.
 {¶ 16} The trial court also found that appellant's chronic mental illness is so severe that she is unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year. R.C. 2151.414(E)(2).
 {¶ 17} Appellant's mental illness issues were a factor to be considered. R.C. 2151.414(E)(2). The court has discretion to consider the psychological illness and behavior of appellant when considering the best interest of the child. In re Vinci (Sept. 3, 1998), Cuyahoga App. No. 73043.
 {¶ 18} Appellant has been diagnosed with chronic paranoid schizophrenia, a psychotic disorder characterized by auditory hallucinations, delusions, and difficulty with thought processing. Although appellant argues that she was taking her medication, Dr. Michael Hottois ("Hottois") testified that throughout the time he had seen appellant, she had failed to take her medication, failed to schedule follow-up appointments in a timely manner, and continued to hear voices. Hottois testified that appellant indicated she experienced daily, and often multiple, hallucinations.
 {¶ 19} Additionally, Fitzgerald, in letters written to Lisaula in January 2002, wrote that appellant was failing to comply with the treatment plan and that appellant felt she did not need further medication.
 {¶ 20} The trial court had clear and convincing evidence within which to rely in finding R.N. could not have been placed with appellant within a reasonable time.
 IV {¶ 21} Appellant next argues that based on the factors enumerated under R.C. 2151.414(D), she should be reunified with R.N. and that the court erred in awarding custody to the state.
 {¶ 22} In support of her argument, appellant states that "a strong bond exists between mother and child that cannot be visually witnesses [sic] by any social worker." Regarding R.N.'s self-esteem issues, appellant argues he is receiving counseling and his condition exists regardless of her interaction with him. She argues R.N. has repeatedly expressed a desire to return home, he has spent eleven of thirteen years in her care, and the state's argument is far from compelling. We find appellant's arguments to be without merit.
 {¶ 23} Regarding the relevant factors for the court to consider, the record indicates that there was little affection shown between R.N. and appellant. Although appellant argues a strong bond exists between the two, she has offered no evidence of same. To the contrary, Lisaula testified that she never saw R.N. and appellant hug or express feelings of love toward each other. Further, appellant had blamed R.N. for the fact he was in custody. Additionally, the guardian ad litem for R.N., Don Ristity ("Ristity"), testified that:
"Mother has maintained visits with some regularity, butusually upsets [R.N.] by her behavior and comments to him: it ismy understanding that she quite often blames him for hisseparation from the family, and the involvement with CCDCFS. Itappears that mother's personal issues have not been resolved, andwould appear that they continue to interfere with her commitmentto [R.N.]."
 {¶ 24} R.N. indicated to Ristity that although he would like to see his mother, he did not want to live with her. Lastly, it is undisputed that R.N. had been in the temporary custody of CCDCFS for 25 months.
 {¶ 25} Regarding R.N.'s need for a legally secure placement, his foster parents have maintained a positive, secure relationship, and R.N. has made a positive adjustment. Testimony reveals that R.N. calls his foster mother "mom" or "grandma," and his foster father is known as "dad."
 {¶ 26} We find that more than one of the factors listed under R.C. 2151.414(D) exist and that the trial court clearly did not abuse its discretion by determining permanent custody to be in R.N.'s best interest.
 {¶ 27} Reviewing the circumstances of R.N.'s custody in their entirety, we find that the court did not err in granting permanent custody to CCDCFS.
 {¶ 28} Appellant's first assignment of error is overruled.
 V {¶ 29} In his second assignment of error, appellant argues that "the trial court erred in not ordering the child placed in planned permanent living arrangement, when an order was supported by the evidence adduced at trial and which evidence did satisfy the statutory requirements and conditions which allow a dispositional order of planned permanent living arrangement." For the reasons stated below, we affirm.
 {¶ 30} In a planned permanent living arrangement ("PPLA"), the court grants the state custody of a child without terminating parental rights. A PPLA is appropriate if the court finds, by clear and convincing evidence, that it is in the best interest of the child and either:
"(a) the needs of the child require that the child remain inresidential or institutional care. R.C. 2151.353 (A)(5)(a);
 (b) the parents have significant physical, mental orpsychological problems that prevent them from caring for thechild, adoption is not in the best interest of the child, and thechild retains a significant and positive relationship with aparent or relative. R.C. 2151.353(A)(5)(b); or
 (c) the child is sixteen years of age or older and isunwilling or unable to adapt to a permanent placement."
 {¶ 31} R.C. 2151.353(A)(5)(c).
 {¶ 32} In the case sub judice, it is clear from the record that R.C. 2151.353(A)(5)(b) is the only possible provision for consideration.[8] Appellant argues that she is "clearly building on her parenting and social skills and soon will be, if she is not already, sufficiently equipped to resume parenting full time." Also, she contends that a beneficial relationship could be fostered with R.N. in the near future.
 {¶ 33} In support of her argument that the trial court erred in not ordering a PPLA, appellant cites In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603. In Campbell, we held that the PPLA is, in effect, a "middle ground" between permanent custody and reunification with the parent that should be encouraged when circumstances clearly comport with R.C.2151.353(A)(5). In upholding the placement of the child in a PPLA, we found:
"CCDCFS presented significant evidence that Campbell sufferedfrom stress related symptoms that made it difficult for her toproperly function as a parent, that she had neglected herchildren in the past and that she missed scheduled visitations,although it is not exactly clear from the record which party wasat fault for the scheduling snafus which precipitated some of themissed visits. On the other hand, the trial court was correct inits assertion that the children retained a significant andpositive relationship with their mother and that Campbell, whilenot ready to assume custody of her children, had made significantstrides towards becoming a better parent and had completed mostof her case plan, including completing parenting classes * * *and testing negative for drugs on all of her urine drops."
 {¶ 34} Appellant argues that the case sub judice is on point with Campbell. We disagree.
 {¶ 35} We have consistently maintained that Campbell did not create an additional reason for granting a PPLA. In re I.M.ak.a. L.M.N., Jr. (Dec. 24, 2003), Cuyahoga App. No. 82669.Campbell simply described the obvious; that a PPLA is the middle ground when considering the spectrum upon which potential custody rests; that spectrum being permanent custody to the state on one hand, and placement with parents on the other. The use of a PPLA is only appropriate when the circumstances meet the statutory requirements of R.C. 2151.353. In the case sub judice, the trial court did not err in deciding this case did not meet the statutory requirements.
 {¶ 36} While appellant completed a four-month parenting program, testimony indicated that her interaction with R.N. remained, at time, inappropriate and deconstructive. The trial court found:
"Just by completing parenting, clearly doesn't mean that aparent — by attending, it doesn't mean a parent is, all of asudden, a good and suitable placement for the child, especiallybased on the social worker's testimony that the mother blames thechild for this situation and that it occurred all the time."
 {¶ 37} Also, Ristity supported the award of custody to the state. Although R.N. was not afraid to see appellant and that they did in fact have a relationship of some kind, we have held that the mere existence of a good relationship is insufficient.In re Holyak, supra. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship. Id.
 {¶ 38} The trial court is in the best position to weigh the credibility of the witnesses and evidence submitted. We are not in a position to second-guess the trial court absent an abuse of discretion. In the case sub judice, we find no such abuse.
 {¶ 39} Appellant's second assignment of error is overruled.
 {¶ 40} The judgment is affirmed.
Judgment affirmed.
Celebrezze, Jr., P.J., and Rocco, J., concur.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The original complaint was dismissed by operation of law after thirteen months without an adjudication.
[2] The evidence will be discussed infra.
[3] The state notes that appellant's brief fails to specifically indicate whether she feels the trial court failed to satisfy the statutory requirements, or whether the trial court's findings were against the manifest weight of the evidence. We will address both arguments where appropriate.
[4] "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." State v. Namestnik, Cuyahoga App. No. 82228, 2003-Ohio-4656, citing Cross v. Ledford (1954),161 Ohio St. 469, 477.
[5] Certain of these factors will be discussed infra.
[6] As R.N. was in custody of CCDCFS for over one year, the court did not need to focus on whether he could be returned to appellant within a reasonable time. In re M.H., Cuyahoga App. No. 80620, 2002-Ohio-2968. However, for the sake of discussion, the record clearly shows that R.N. could not have been placed within a reasonable time.
[7] Lisaula testified that she included parenting classes because R.N. had reported physical abuse by appellant and Lisaula witnessed poor parenting skills, e.g., appellant blaming R.N. for the fact he was in the custody of CCDCFS. Regarding the child's characteristics, it was established that R.N. suffers from lack of self-esteem, poor social skills, and repeated bed-wetting.
[8] R.N. is under the age of 16 and there are no findings that he requires institutional care.