[Cite as *In re J.A.*, 2022-Ohio-1324.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE J.A., JR. | : | |
| | : | No. 111029 |
| A Minor Child | : | |
| | : | |
| [Appeal by K.B., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 21, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD20901089

***Appearances:***

Wargo Law, LLC, and Leslie E. Wargo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant K.B. ("Mother") appeals the decision of the Cuyahoga County Juvenile Court terminating her parental rights and awarding custody of her minor son, J.A., Jr., to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "agency"). After a thorough review of the law and applicable facts, we affirm the judgment of the juvenile court.

# I. Factual and Procedural History

{¶ 2} CCDCFS became involved in this matter in January 2020, when J.A. was placed in agency custody after suffering burns to his lower extremities when he was just 18 months old. Mother stated that she believed that he had "[done] this to himself." J.A. had suffered immersion burns from his knees to his feet, requiring skin-graft surgery. Medical professionals opined that the injuries were non-accidental and not consistent with the explanation provided by the family.

{¶ 3} In December 2020, the agency moved to modify temporary custody to permanent custody. In April 2021, a trial was held on the agency's motion, after which the trial court denied the motion and continued temporary custody. In its entry denying the motion, the juvenile court ordered Mother to complete a substance abuse assessment and follow all recommendations, to submit to drug testing by CCDCFS by April 28, 2021, and to submit to random drug testing twice a month, as requested by the agency.

{¶ 4} CCDCFS worker T'ara Williams ("Williams") was assigned to the case after the denial of permanent custody in April 2021. At that time, she learned that Mother was engaged in a domestic violence program and a parenting program; she also claimed to be engaged in mental health services. However, Williams did not believe that Mother had benefitted from those services. Mother was still residing with her family in the same home where the incident with J.A. happened where one of the family members had inflicted serious abuse on J.A. With regard to how the

burns happened, she maintained that J.A. "did this to himself." Williams was concerned that Mother lacked empathy for J.A. and the trauma he had endured.

{¶ 5} Williams was also concerned that Mother had not benefitted from the domestic violence services. J.A.'s alleged father[1] had been charged with domestic violence against Mother, and Mother had failed to appear at two different trial dates, resulting in the case against him being dropped. Further, when Williams asked Mother if she still maintained a relationship with J.A.'s alleged father, she stated that she could not because the agency told her she could not. This concerned Williams because Mother seemed to not recognize that the relationship was unhealthy and dangerous, but instead only that the agency would not allow her to continue it.

{¶ 6} While Williams did not ever see Mother and J.A.'s alleged father together, she still had concerns that they were still involved. During the pendency of this matter, J.A.'s alleged father had been charged with felonious assault (against another victim), a felony of the second degree. The indictment stated that he had caused or attempted to cause physical harm using a deadly weapon, which was a gold SUV. This concerned Williams because Mother also drives a gold SUV, which Williams had personally seen her drive.

{¶ 7} Williams was also concerned whether Mother was receiving mental health services. Mother provided a phone number for her therapist at Ohio

---

[1] Paternity was not established in this matter. The agency requested that both Mother and J.A.'s alleged father submit to paternity testing. A caseworker took J.A. for testing, but neither parent followed through.

Guidestone, but Williams was never able to make contact with the therapist. She asked Mother to sign a release of information form so that the agency could verify that she was engaging in mental health services, but Mother did not ever sign any release.

{¶ 8} During the pendency of the case, Mother was charged with aggravated possession of drugs, a felony of the fifth degree. Williams stated that the offense was for cocaine, but Mother had told her that it was ecstasy and later stated that it was marijuana.

{¶ 9} Mother was sentenced to probation and was required to provide drug screens. She was inconsistent with reporting to her probation officer and was later arrested for failing to comply with the terms of her probation.

{¶ 10} Substance abuse services were added to Mother's case plan. Williams referred her for a drug assessment through Recovery Resources, but Mother did not go to the initial intake because she stated that she was "not a crackhead."

{¶ 11} Mother submitted to several urine screens and tested positive for cocaine and marijuana in June 2021. In July 2021, she tested positive for marijuana. Mother was referred for additional screens but did not comply.

{¶ 12} Mother's visitation with J.A. had been inconsistent but became more consistent in early July 2021. Many of her visits with J.A. had been virtual due to COVID concerns, and Mother was often not engaged during these visits. When Williams was assigned to the case, the visits became in-person each week with

Williams supervising. Mother attended approximately 75 percent of the visits and either canceled or simply did not show up to the rest.

{¶ 13} In July 2021, CCDCFS again moved to modify temporary custody of J.A. to permanent custody. The motion stated that Mother had failed to complete the ordered drug and alcohol assessment, had failed to consistently submit to random drug screens, had tested positive for cocaine and marijuana in June 2021, and had failed to engage in mental health services. The motion further noted that Mother had failed to address ongoing domestic violence concerns and failed to consistently visit with J.A.

{¶ 14} Trial was held on the motion in October 2021. Testimony was presented from Williams and the guardian ad litem, Paul Berman. Both Williams and the GAL testified that granting permanent custody to the agency was in the best interest of J.A. Following the hearing, the trial court granted the motion for permanent custody to CCDCFS and terminated Mother's parental rights.

{¶ 15} Mother then filed the instant appeal, raising one assignment of error for our review:

> The evidence presented to the trial court did not support, by clear and convincing evidence, a finding that permanent custody to the agency was in the best interests of the child; whereas an extension of temporary custody should have been granted.

## II. Law and Analysis

{¶ 16} The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re*

*Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see also In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (a parent has a "'fundamental liberty interest' in the care, custody, and management" of his or her child). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 17} Because termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14, it is "an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). "'All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life for the dependent children" and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing

*In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 18} Before a juvenile court can terminate parental rights and grant permanent custody of a child to CCDCFS, it must satisfy the two-prong test set forth in R.C. 2151.414. First, the juvenile court must find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) exists:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> (b) The child is abandoned.

> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated

an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 19} Second, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). "Clear and convincing evidence" is that measure or degree of proof that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *In re M.S.* at ¶ 8. A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence." *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 20} In this case, CCDCFS moved for permanent custody under R.C. 2151.414(B)(1)(d), which provides that the child had been in agency custody for 12 or more months of a consecutive 22-month period. The trial court determined that this condition was satisfied — J.A. had been in agency custody for over 20 months of a consecutive 22-month period. Mother does not dispute this finding but argues that the juvenile court should have extended temporary custody and allowed her more time to engage in her case plan. Consequently, we need only determine if permanent custody was in the best interest of J.A.

{¶ 21} Mother asserts that at the time of the hearing, she had completed a parenting program. While the social worker testified that parenting was a concern, Mother argues that she never referred Mother to a parenting coach or made any other additional referrals to address the issue. In addition, while there was also concern about Mother having a psychological evaluation, the case worker never made a psychological evaluation referral for Mother; regardless, Mother maintains that she had engaged in counseling services through Ohio Guidestone. Additionally, with regard to the domestic violence issue, Mother completed a domestic violence course well before the hearing, and no additional referrals were made for Mother on this issue.

{¶ 22} Mother further contends that the agency had no concerns with Mother's visitation with J.A. Williams testified that as J.A. has become older and has seen his mother more regularly, he understands better who she is and becomes excited to see her.

{¶ 23} We review a juvenile court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 24} In determining the best interest of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 25} A juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, but "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has previously stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993). Further, the Supreme Court of Ohio has clarified that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C.

2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, Slip Opinion No. 2019-0923, 2020-Ohio-5102, ¶ 31.

{¶ 26} Here, the juvenile court stated that it considered the relevant factors set forth under R.C. 2151.414(D)(1) when assessing J.A.'s best interests. Upon careful review of the record, we do not find that the juvenile court abused its discretion in determining that permanent custody was in J.A.'s best interest.

{¶ 27} R.C. 2151.414(D)(1)(a) relates to the interaction and interrelationship of the children with various significant individuals in the child's life, including parents, siblings, relatives, and foster caregivers. The record demonstrates that J.A. had been placed with his maternal great aunt, who was interested in adopting him. There was testimony that J.A. was in a loving home with a caregiver that he trusted.

{¶ 28} While Mother's visitation with J.A. had become more consistent as the case went on, there was testimony that she did not show or canceled approximately 25 percent of the visits. She was engaged with J.A. during these visits, and he had grown to be excited for the visits and come to recognize her as his mother. However, this court has stated that "'the mere existence of a good relationship is insufficient. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship.'" *In re K.M.*, 8th Dist. Cuyahoga No. 95374, 2011-Ohio-349, ¶ 23, quoting *In re R.N.*, 8th Dist. Cuyahoga No. 83121, 2004-Ohio-2560.

{¶ 29} There was also testimony that Mother did not appear to have empathy toward J.A. regarding the burns he had incurred and did not seem to accept that

someone in her family had seriously abused her son and instead chose to believe that he had done it to himself.

{¶ 30} Under R.C. 2151.414(D)(1)(b), the juvenile court was to consider the child's wishes as expressed directly or through their GAL. At the time of trial, J.A. was only three years old and too young to express his wishes in regard to permanent custody. "The juvenile court properly considers the GAL's recommendation on the permanent-custody motion as part of the R.C. 2151.414(D)(1)(b) analysis where the children are too young to express their wishes." *In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45. In the instant matter, the GAL recommended permanent custody to CCDCFS, based upon Mother's only partial completion of the case plan, her failure to demonstrate that she did not have a substance abuse issue, her failure to demonstrate that she is attending therapy, J.A.'s status as a special needs child, and his current placement in a loving home with a secure caretaker.

{¶ 31} R.C. 2151.414(D)(1)(c) is relative to the child's custodial history, which Mother concedes. As noted above, J.A. has been in the custody of the agency for over 20 months, over half of his life.

{¶ 32} R.C. 2151.414(D)(1)(d) relates to the child's need for a legally secure placement and whether that can be achieved without a grant of permanent custody. The trial court in this case found that J.A. cannot be placed with one of his parents within a reasonable time or should not be placed with either parent. Specifically, the trial court made findings under R.C. 2151.414(E) including Mother's "failure to

remedy" and "lack of commitment." "'Once a court determines, by clear and convincing evidence, that one of the enumerated factors exists, the court must enter a finding that the child cannot or should not be placed with either of his parents within a reasonable time.'" *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 43, quoting *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000). As noted above, paternity was not established and J.A.'s alleged father is not a part of this matter.

{¶ 33} Under R.C. 2151.414(D)(1)(e), the juvenile court was to consider whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 applied in relation to Mother and J.A. Although it did not distinguish between Mother or the alleged father, the trial court found that one of the parents had abandoned the child. Clearly, this must relate only to J.A.'s alleged father as there was no evidence that Mother had abandoned J.A. While none of the remaining factors in R.C. 2151.414(E)(7) to (11) apply to Mother, the court was only required to *consider* all of the factors in 2151.414(D)(1) in determining the best interest of J.A.; it did not have to find that each factor *applied*.

{¶ 34} The above-mentioned findings were all supported by the testimony presented at trial. Moreover, the court was guided by the recommendation of the GAL, who spoke on behalf of J.A. and recommended that it was in J.A.'s best interest to grant the agency permanent custody.

{¶ 35} Mother argues that the sole issue that remained, and that she should have been given additional time to address, was the substance abuse aspect. Mother

acknowledges that she failed drug screens but maintains that temporary custody could have been extended to allow her time to address the substance abuse issue.

{¶ 36} R.C. 2151.353(G) provides that the statutory term for a temporary custody order is one year. While the agency is permitted to seek up to two six-month extensions of temporary custody, the decision to exercise that statutory right is left in the sound discretion of the agency and is not mandated by statute. *See* R.C. 2151.415(A)(6) and (D)(1)-(4). *See also In re A.C.*, 2d Dist. Montgomery No. 26211, 2014-Ohio-4402, ¶ 18 (noting that "[the agency] was not required to seek an extension of temporary custody * * * [and] was entitled to move for permanent custody rather than to seek an extension"). The juvenile court may extend temporary custody if it finds that extension is (1) in the best interest of the child, (2) significant progress has been made on the case plan, and (3) "there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension." R.C. 2151.415(D)(1).

{¶ 37} We disagree with Mother that an extension was warranted in this matter. J.A. had been in the custody of CCDCFS for over 20 months and yet Mother had not completed her case plan. She did not fully comply with the juvenile court's order to submit to urine screens, and when she did actually submit to screens, she twice tested positive for drugs. In addition, Mother was charged with felony drug possession and later violated her probation from that case.

{¶ 38} While Mother contends that the substance abuse was the only problem, Williams testified that there were other concerns about Mother, including

her failure to remedy issues and her lack of commitment. Williams testified that since July 2021, Mother's visits with J.A. were weekly in-person with Mother attending approximately 75 percent of the visits. During the visits, Mother engaged with J.A. and was attentive to him "for the most part." Williams testified that J.A. did not readily recognize Mother when the visits began, but later would become more excited about the visits and disappointed when the visits were canceled. Williams stated that J.A. was learning Mother as *his* mother.

{¶ 39} Williams testified that J.A. is a very sweet child, but he does not communicate well. He is three years old but verbalizes and functions as an 18-month-old. He cannot express if there is a problem and cannot identify the cause of any discomfort or frustration. Williams testified that this concerned the agency because if he were to be returned to Mother and something happened, they would not know.

{¶ 40} In addition, there are concerns that J.A. may be autistic, and at the time of trial, he was on a waiting list to be evaluated. Mother does not believe that there is an issue regarding autism and that "that's just how he is," which also presented a concern for the agency.

{¶ 41} Moreover, J.A. suffers from lingering trauma from the burns he incurred. Williams testified that she is concerned because Mother does not appear to have empathy for J.A. nor does she acknowledge that someone in her family seriously abused J.A.

{¶ 42} The fact that Mother has been visiting J.A. more consistently does not negate the evidence demonstrating her failure to complete her case plan services by the time trial commenced. *See In re A.L.A. & A.S.A.*, 11th Dist. Lake Nos. 2011-L-020 and 2011-L-021, 2011-Ohio-3124, ¶ 108 ( A parent "is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal.").

{¶ 43} We note that Mother was already given additional time to complete her case plan when the court originally denied the agency's motion for permanent custody in April 2021. Rather than utilizing the additional time, appellant did not comply with the amendments to her case plan ordered by the trial court and continued to abuse drugs, even being charged with aggravated possession of cocaine. There is no evidence in the record that it would be beneficial to J.A. to allow Mother to have additional time to try to achieve what she already should have accomplished. Accordingly, the juvenile court properly found that an extension of temporary custody was not in J.A.'s best interest.

### III. Conclusion

{¶ 44} After thoroughly reviewing the entire record, we affirm the juvenile court's judgment granting permanent custody of J.A. to CCDCFS. The juvenile court's judgment was not against the manifest weight of the evidence, and an extension of temporary custody was not warranted. Mother's sole assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
LISA B. FORBES, J., CONCUR